**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CIANA EVANS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-1410** |
| | : | |
| **SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **December 13, 2022**

We expect our school districts guide, monitor, and evaluate new teachers in a non-discriminatory manner. A district may offer corrective steps to new teachers hired on an emergency basis consistent with its established protocols including under agreements with its teachers' unions. We expect our education professionals will not retain new teachers who do not meet the district's established standards without discriminating based on race or sex.

We today review a claim by a Black woman hired as a new teacher to fill an emergency need in the 2020-2021 school year and then fired at the end of the school year. She alleges the district did not retain her because of her race and sex. The district told her of problems in her first couple months and afforded multiple corrective opportunities. The new teacher responded to one corrective mid-year suggestion with an immediate February 2021 grievance to the teachers' union. The teacher does not adduce evidence the district's decision to fire her in June 2021 is based on her race or sex. She instead cites (almost exclusively) a post-termination fulsome district-led investigation of her school principal leading the district to conclude the principal created an antagonistic workplace by offending persons of all races and ethnicities but could find no basis for race, sex, or any other protected category towards the teacher or others. The undeterred teacher now asks us to second-guess the district's personnel decisions and assume it is liable for race and

sex discrimination and retaliatory conduct because the school principal offended everyone. We cannot join her in this leap absent evidence.

The teacher does not adduce evidence beyond her speculations a principal creating an antagonistic work environment would fire her based on her race and sex or in retaliation for a union grievance four months earlier. But the allegedly abusive principal does not decide who is terminated; she and another supervisor can only recommend retention or termination. The teacher adduces no evidence the principal sought to fire her based on her race or sex. The teacher admits the other supervisor recommending termination is not culpable in her termination. The teacher adduces no evidence of a causal connection between the district's June 2021 decision to terminate her one year employment and the teacher's February 2021 union grievance.

We grant the district's motion for summary judgment as there are no genuine issues of material fact precluding judgment as matter of law on the teacher's race and sex disparate treatment and retaliation claims.

I.    **Undisputed Facts.**[1]

The Philadelphia School District hired Ciana Evans, a Black woman, to begin teaching at the District's Delaplaine McDaniel School in August 2020.[2] Ms. Evans did not hold a teaching certification from the Commonwealth and worked under the Department of Education's emergency permit provisions.[3] Ms. Evans acted as a "specialist/prep teacher" and taught a curriculum called "Project Wisdom."[4]

### *The District reviews Ms. Evans under its mandatory Peer Assistance and Review Program for new and non-tenured teachers.*

A collective bargaining agreement between the District and its teachers' union governed Ms. Evans's rights as a new teacher.[5] The District and union agreed to programs to assess new and non-tenured teacher performance and interventions.[6] One program is the "Peer Assistance and

Review Program" (the "Program") for evaluating teacher competency.[7] The Program is administered by a panel of four Union representatives and four District representatives (the "Panel").[8] The Panel exercises broad discretions in deciding eligibility for the Program, monitors the overall progress of teachers participating in the Program, and offers retention recommendations for new teachers participating in the Program.[9] Participation in the Program is mandatory for all new and non-tenured teachers like Ms. Evans in Fall 2020.[10]

The Program is designed to coach, review, and evaluate new teachers.[11] The Program assigns a Consulting Teacher for each participant in the Program.[12] The assigned Consulting Teacher observes and reviews, plans and implements professional development, and offers recommendations for retention or dismissal to the Panel for the teachers assigned to them.[13] The Program requires a school principal "will conduct" one formal observation of all new teachers using an assessment standard developed by the District.[14] The Panel makes the final determination on a new teacher's competency on completion of the Program and recommends retention or dismissal.[15]

### *Ms. Evans participates in the Program for the 2020–2021 school year and is assessed by three McDaniel School administrators.*

Ms. Evans participated in the Program for the 2020–2021 school year as a new and untenured teacher.[16] Principal Betsaida Ortiz, a Hispanic woman, supervised Ms. Evans at the McDaniel School.[17] Leslie Strothers, a Black woman, acted as the Consulting Teacher for Ms. Evans.[18] Consulting Teacher Strothers visited Ms. Evans's classroom thirty-four times over the school year, providing support, modeling, setting goals, and coaching Ms. Evans on improving classroom performance in three teaching areas.[19] After visits, Consulting Teacher Strothers provided Ms. Evans with feedback and assessed her performance against the District's standards.[20]

The form included an assessment of Ms. Evans's "current status" based on a three-category scale: "not meeting standards"; "approaching standards"; and "meeting standards."[21]

Between September 2020 and January 26, 2021, Consulting Teacher Strothers assessed Ms. Evans as "not meeting standards" six times and "approaching standards" six times.[22] Consulting Teacher Strothers never assessed Ms. Evans as "meeting standards" during the September 2020 to January 26, 2021 time period.

McDaniel School Assistant Principal Sheree Howard, a Black woman, visited Ms. Evans's classroom to conduct an informal observation midway through the school year on January 21, 2021.[23] An "informal observation" is scored but does not count toward a new teacher's overall effectiveness rating and is instead meant to provide feedback and prepare a teacher for her formal observation by the school principal.[24] Assistant Principal Howard assessed Ms. Evans with a score of "needs improvement" in one teaching area, an assessment of "unsatisfactory" in another teaching area, and an overall rating of "needs improvement."[25]

The Panel provided Ms. Evans with a "Mid-Year Review of Teaching Performance" memo about twenty days after Assistant Principal Howard's informal observation.[26] The Panel, in its Mid-Year Review, told Ms. Evans she is not making satisfactory progress in two teaching areas — Planning and Preparation and Instruction — and she would be placed on an "Intensive Support Plan" focused on the areas where she did not meet standards.[27] Consulting Teacher Strothers developed the Intensive Support Plan.[28] Ms. Evans conceded she did not meet standards on "occasion" and began to meet with Consulting Teacher Strothers more frequently for assistance and interventions.[29]

Principal Ortiz conducted an informal observation of Ms. Evans's classroom on February 11, 2021.[30] Principal Ortiz, like Assistant Principal Howard, scored Ms. Evans as "needs

4

improvement" in one teaching area, "unsatisfactory" in another teaching area, and an overall rating of "needs improvement."[31] Informal observations, like those conducted by Assistant Principal Howard and Principal Ortiz, do not count toward a teacher's overall effectiveness rating and are intended to provide feedback to a teacher and assist the teacher in preparing for a formal observation.[32]

### *Ms. Evans files a grievance with the Union on February 13, 2021.*

Ms. Evans filed a grievance with the Union against Principal Ortiz two days after her informal observation.[33] She attached a document detailing her concerns with Principal Ortiz, but the document is not in the record because Ms. Evans did not produce it in discovery in response to the District's request.[34] Ms. Evans referenced her reluctance to send her grievance to Sean Conley, the Assistant Superintendent of the Philadelphia School District, and asked if her grievance could be "sent anonymously."[35]

Ms. Evans swore she based her grievance on Principal Ortiz's "behavior towards" her and Principal Ortiz's "conduct in the classroom" as "disruptive and unprofessional given her status as principal."[36] Ms. Evans swore she "can't recall exactly" what she meant by "disruptive and unprofessional," but "remember[s] [Principal Ortiz] engaging with the students in a manner that interrupted the class while I was trying to teach. ..."[37]

Ms. Evans admittedly did not complain about race or sex discrimination in her February 13, 2021 Union grievance.[38] Ms. Evans also admits she cannot adduce evidence the Union acted on Ms. Evans's grievance; forwarded her grievance to the Assistant Superintendent of the Philadelphia School District Conley; or Principal Ortiz knew about Ms. Evans's February 13, 2021 grievance.[39]

***Principal Ortiz conducts a second informal observation of Ms. Evans's classroom
on May 11, 2021 and comments on Ms. Evans's decision to show a movie.***

Principal Ortiz conducted a second informal observation of Ms. Evans's classroom on May 11, 2021.[40] Principal Ortiz again scored Ms. Evans as "needs improvement" in one area, "unsatisfactory" in the other area, and an overall rating of "needs improvement."[41] In the meantime, from February 2021 to the end of May 2021, Consulting Teacher Strothers continued to assess Ms. Evans and work with her on the Intensive Support Plan. Consulting Teacher Strothers scored Ms. Evans as "not meeting" standards twelve times and scored Ms. Evans as "meeting" standards once.[42]

Principal Ortiz's May 11, 2021 informal observation noted Ms. Evans showed a movie to her second-grade class during the entire class period despite Ms. Evans's assignment as a writing teacher.[43] Principal Ortiz commented: "Showing full movies to students during class time is not the way to go" and suggested ways to appropriately use movies for educational benefit.[44]

***Principal Ortiz conducts a formal observation of Ms. Evans's classroom on May 21, 2021.***

Principal Ortiz scheduled a formal observation of Ms. Evans to assess development under District guidelines consistent with the Program. Principal Ortiz conducted a formal observation of Ms. Evans's teaching performance in a fifth-grade classroom on May 21, 2021.[45] Principal Ortiz assessed Ms. Evans's performance with a score of 1.3 on a scale of zero to three.[46] In the first teaching domain of Planning and Preparation, Principal Ortiz assigned a score of "needs improvement" in the areas of setting instructional outcomes and designing coherent instruction.[47] In the second teaching domain of the Classroom Environment, Principal Ortiz assigned a score of "proficient" in establishing a culture for learning and managing student behavior and "needs improvement" in managing classroom procedures.[48] In the third teaching domain of Instruction,

6

Principal Ortiz assigned a score of "needs improvement" in the areas of communicating with students, using questioning and discussion techniques and engaging students in learning.[49]

### *Principal Ortiz and Consulting Teacher Strothers recommend termination and the Panel unanimously decides to terminate Ms. Evans in a June 8, 2021 Statement of Charges and Notice of Right to Hearing.*

Both Principal Ortiz and Consulting Teacher Strothers recommended Ms. Evans's dismissal to the Panel.[50] There is no dispute Principal Ortiz did not have the authority to terminate Ms. Evans and could only recommend to the Panel.[51] Ms. Evans swore she "did not think [Consulting Teacher] Strothers (also a Black woman) recommended me for termination because of my race."[52]

The Panel – composed of four District and four Union members – rated Ms. Evans's teaching performance as "unsatisfactory" and unanimously recommended the District terminate her based on information "collected and submitted" by Principal Ortiz and Consulting Teacher Strothers.[53] The District notified Ms. Evans on June 8, 2021 of the Panel's unanimous decision recommending dismissal and advised her of her right to a hearing to appeal the Panel's decision by either submitting a timely written request for a Board of Education hearing or requesting the Union follow the collective bargaining agreement grievance procedure.[54] Ms. Evans objected to Principal Ortiz's formal observation three days after the District's Statement of Charges.[55] Ms. Evans submitted a "rebuttal" to Principal Ortiz's formal observation.[56] There is no dispute a "rebuttal" is not part of the Program's process and observation scores are not changed.[57]

Ms. Evans then appealed the Panel's recommendation of termination at a hearing with the Board of Education.[58] Neither party adduced evidence about what happened with the Board of Education hearing on appeal or even if an administrative hearing occurred.

*Ms. Evans files a complaint of discrimination and harassment with the District's Office of Employee and Labor Relations on June 25, 2021.*

Ms. Evans filed a complaint of discrimination and harassment with the District's Office of Employee and Labor Relations on June 25, 2021 alleging Principal Ortiz subjected her and other women of color and women in the LGBTQ community to harassment during the 2020–2021 school year.[59] The District assigned Lindsay O'Brien as the Investigative Officer.[60]

Investigative Officer O'Brien began investigating Ms. Evans's claims of discrimination, including hostile work environment, based on race and identification with the LGBTQ community, and retaliation. She also investigated allegations made by another teacher, Megan Gerber, a white woman who identifies with the LGBTQ community, against Principal Ortiz for discrimination, harassment, and retaliation based on Ms. Gerber's identification with the LGBTQ community.[61]

Investigative Officer O'Brien interviewed twenty-two witnesses and reviewed forty exhibits culminating in a twenty-nine-page investigative report of both Ms. Gerber's and Ms. Evans's allegations.[62] Investigative Officer O'Brien examined allegations of unprofessional conduct against Principal Ortiz raised by "the parties and witnesses" during the course of her investigation.[63]

The District's Office of Employee and Labor Relations issued an Investigative Report on November 19, 2021 based on Investigative Officer O'Brien's findings.[64] The District found insufficient evidence Principal Ortiz recommended Ms. Evans's dismissal because of her race.[65] The District specifically found: Principal Ortiz provided legitimate, race-neutral reasons for recommending Ms. Evans's dismissal; Consulting Teacher Strothers similarly and independently recommended Ms. Evans's dismissal based on legitimate concerns with Ms. Evans's teaching abilities and lack of improvement during the 2021–2021 school year; and interviews of current and former employees at McDaniel School did not evidence a pattern and practice of race-based

8

discrimination by Principal Ortiz.[66] The District concluded there is insufficient evidence to show Principal Ortiz's treatment of McDaniel School employees, including Ms. Evans, is discriminatory based on race, sexual orientation, or any other protected category.[67]

The District also found insufficient evidence Principal Ortiz harassed Ms. Gerber based on sexual orientation or retaliated against her.[68] The District concluded there is insufficient evidence to establish Principal Ortiz violated the Code of Conduct by calling and texting employees on evenings and weekends; acted inappropriately during Ms. Evans's classes; or discriminated against McDaniel employees based on race, sexual orientation, or any other protected activity.[69]

But the District also found Principal Ortiz also did not offer a model of education leadership. The District found Principal Ortiz "created an antagonistic environment for McDaniel employees of various races and ethnicities during the 2020–2021 school year," including remarks referring to parents as "those people"; using the term "ghetto" to describe staff members; telling another employee and member of the LGBTQ community to meet with students "in the closet if she needed privacy"; telling multiple employees not to ask questions during professional development meetings; describing her leadership team as "incompetent" and "lazy"; disciplining various staff members for trivial incidents that could have been addressed informally; and contacting the Office of Special Education Services in an attempting to "find something" on Assistant Principal Howard to justify disciplining her.[70]

### *Ms. Evans files two Charges of Discrimination with the Equal Employment Opportunity Commission in July and December 2021.*

Ms. Evans filed Charges of Discrimination with the Equal Employment Opportunity Commission on July 26, 2021 and on December 1, 2021.[71] The parties did not include these Charges for our review nor do they tell us the bases for the charges. The EEOC issued two right-to-sue letters to Ms. Evans.

9

### *Ms. Evans sues the District.*

Ms. Evans timely sued the District alleging it illegally terminated her because of her race, sex, and disability (diabetes and anxiety) and in retaliation for her complaints of discrimination and harassment.[72] Ms. Evans also alleged disparate treatment based on race and sex and retaliation in violation of 42 U.S.C. § 1981, Title VII, 42 U.S.C. § 2000e, *et seq.*, disparate treatment based on disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and discrimination and retaliation based on race, sex, disability, and retaliation in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA").[73] Ms. Evans pleaded the District treated her differently than "White and *male* employees."[74] She does *not* allege discrimination based on her sexual orientation.[75] She does not allege a hostile work environment.

## II.   Analysis

The District moved for summary judgment.[76] Ms. Evans opposes summary judgment but she withdrew her Americans with Disabilities Act claim.[77]

Ms. Evans seeks recovery under federal and Pennsylvania law for discrimination based on her race and gender and for retaliatory firing four months after her union grievance. As our Court of Appeals succinctly instructs: "summary judgment is essentially 'put up or shut up' time for the non-moving party."[78] Ms. Evans fails to "put up" evidence; she has the burden to rebut the District's motion with facts in the record creating a genuine issue of material fact to support her claim the District discriminated against her on the basis of her race and sex and retaliated against her for complaining about race and sex-based discrimination. Ms. Evans fails to meet her burden at summary judgment.

Federal and Pennsylvania law prohibit discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, ***because of*** such individual's race, color, ... [or] sex."[79] Ms. Evans must show evidence the District discriminated against her ***because of*** her race or sex. Federal and Pennsylvania law also prohibit employers from retaliating against employees engaging in protected activity if the employee can show a causal connection between the protected activity and the adverse employment action.

There is no evidence Principal Ortiz discriminated against Ms. Evans because of her race or sex. Ms. Evans instead directs us to what she calls Principal Ortiz's "penchant for taking discriminatory, harassing and retaliatory actions" — as she construes the District's November 19, 2021 Investigative Report — and argues this "penchant" is "in and of itself, ... sufficient to provide evidence supporting an inference" of discrimination and retaliation.[80] Ms. Evans relies primarily on the District's Investigative Report concluding, in part, Principal Ortiz lacked professional conduct by "creat[ing] an antagonistic environment for McDaniel employees of various races and ethnicities" during the 2020–2021 school year and culling statements made by other employees during the investigation reporting Principal Ortiz's unprofessional conduct.[81] Ms. Evans does not seek relief under a hostile work environment claim.

But the District's investigation finding Principal Ortiz unprofessional for creating a "generally antagonistic" environment for all McDaniel employees of "various races and ethnicities" is not evidence the District dismissed Ms. Evans ***because of*** her race and sex. This is particularly so where the Investigative Report found insufficient evidence of race-based discrimination by Principal Ortiz against Ms. Evans specifically, women of color, or any McDaniel employee based on race, sexual orientation, or any other protected category. But a finding Principal Ortiz created an "antagonistic" environment for all employees of "various races and ethnicities"

11

at the McDaniel School does not *a priori* create an inference Principal Ortiz discriminated against Ms. Evans because of her race or sex. While Principal Ortiz appears (at least from the Investigative Report) to verbally abuse her co-workers, Title VII is not "a general civility code."[82] And Ms. Evans did not allege a hostile work environment claim; she alleges only disparate treatment based on race and sex and retaliation.

Ms. Evans also does not adduce evidence of retaliatory firing following her February 2021 union grievance.

### A. Ms. Evans fails to adduce evidence of race or sex-based discrimination.

The District argues Ms. Evans fails to establish a prima facie case of discrimination based on race or sex and, even if she did establish a prima facie case of discrimination, she cannot show the District's legitimate, non-discriminatory reasons for her termination are pretextual. Ms. Evans agues she established a prima facie case of race and sex discrimination and produced evidence of pretext.

Ms. Evans alleges discriminatory and harassing behavior by Principal Ortiz from nearly the beginning of her assignment at McDaniel School. Ms. Evans identifies specific instances of Principal Ortiz's race and sex-based discriminatory animus in recommending Ms. Evans's termination to the Panel:

- At an October 12, 2020 staff meeting, Ms. Evans asked about a schedule change to which Principal Ortiz responded in a hostile tone of voice Ms. Evans's class is not interesting, implied Ms. Evans's position is unnecessary, Ms. Evans did not have the right to a schedule change, and Ms. Evans is an ineffective teacher;[83]

- Principal Ortiz did not provide Ms. Evans with a curriculum despite promising to do so before the start of the 2020–2021 school year;[84]

- At an October 19, 2020 professional development meeting with Principal Ortiz, other administrators, and specialists on the Project Wisdom class to be taught by Ms. Evans, Principal Ortiz dismissed all attendees and ended the meeting. Principal Ortiz then telephoned Ms. Evans, with Assistant Principal Howard listening, and accused Ms. Evans

of laughing at her [Principal Ortiz] during the meeting, called Ms. Evans "stupid," a "smart ass," "dumb," and "wasted her time," and demanded Ms. Evans work on the weekend to best accommodate Principal Ortiz's schedule;[85]

- Almost four months later in early February 2021, Principal Ortiz sent a notice to the McDaniel School staff with new instructions for teaching Black History Month. Ms. Evans emailed another staff member and Assistant Principal Howard asking for clarification, who then forwarded Ms. Evans's email to Principal Ortiz. Principal Ortiz responded to Ms. Evans in a "negative manner" and referenced an incident where she believed Ms. Evans to be asleep during a professional development meeting. Principal Ortiz copied Consulting Teacher Strother on the email;[86]

- Principal Ortiz rudely and disruptively entered Ms. Evans's classroom around February 21, 2021 and "interrogated" Ms. Evans in front of her students and, a few days later, submitted notes of Ms. Evans's performance in an informal observation assessment which included "copying and pasting" the earlier February 2021 email (presumably about Black History Month);[87]

- Principal Ortiz again conducted an informal observation of Ms. Evans in a second-grade class around May 21, 2021 contrary to the District's policies. Principal Ortiz's informal observation noted Ms. Evans is not permitted to show movies to students but Principal Ortiz allowed non-Black teachers to show the same movies without criticism;[88]

- Principal Ortiz did not allow Ms. Evans or other Black women teachers to ask questions or speak during professional development meetings because Principal Ortiz did not like the comments by Black women teachers and believed some comments inappropriate;[89]

- Principal Ortiz "persuaded" Ms. Evans "not to fill the Middle Years [English Language Arts] position [Ms. Evans] had applied for"; called Ms. Evans "stupid and meaningless" in a telephone call; told Ms. Evans she could not ask questions during professional development sessions; exhibited "disruptive and unprofessional" conduct in Ms. Evans's classroom; and "otherwise exhibited racially-biased behavior." [90]

In response to the District's interrogatory: "Please describe in detail the basis for your assertion that Principal Ortiz's recommendation that you be terminated was based on your race and/or any other alleged protected class?" Ms. Evans responded: "[Principal] Ortiz's actions towards and decisions regarding Ms. Evans consistently reflected a racially discriminatory motivation."[91] There is no mention of sex or sexual orientation.

Ms. Evans bases her retaliation claim on the protected activity of sending her grievance to her Union representative on February 13, 2021 and the District terminated her after the Union

forwarded her grievance to Assistant Superintendent Conley. Ms. Evans admits there is no record evidence the Union acted on her grievance or forwarded it to Assistant Superintendent Conley or Principal Ortiz's knowledge of the February 13 emailed grievance.[92] Despite her admission, Ms. Evans argues there is evidence from Ms. Gerber and Assistant Superintendent Conley sometime between February 25 and March 4, 2021, Principal Ortiz learned about "the letters" sent to Assistant Superintendent Conley.[93] The "evidence" referred to is the District's Investigative Report referring to a letter Ms. Gerber sent to Assistant Superintendent Conley – not a letter sent by Ms. Evans.

Ms. Evans identified five white teachers treated more favorably than her regarding formal observations conducted by Principal Ortiz: Brittany Ponti, Caroline Zuleba, Kirstie Kajkowski, and Ann Lupoli, all white women, and Joseph Farina, a white male.[94] Ms. Ponti, Ms. Zuleba, and Ms. Kajkowski participated in the Program during the 2020–2021 school year.[95]

But then Ms. Evans concedes:

- There are no formal observations in the record for any of the five identified comparators;

- Neither Mr. Farina nor Ms. Lupoli were first year or new teachers nor in the Program during the 2020–2021 school year and both are tenured teachers;

- Ms. Ponti is a certified teacher;

- She does not know the results of Ms. Ponti's formal observation scores or the final recommendation of Ms. Ponti's Consulting Teacher; and

- She does not know how long Ms. Zuleba has been teaching and does not know the final recommendation of Ms. Zuleba's Consulting Teacher.[96]

Ms. Evans swore Principal Ortiz did not actually make a formal observation of Ms. Kajkowski and instead made up the results which Principal Ortiz denied under oath. But Ms. Evans does not provide record evidence to support this allegation.[97]

14

Ms. Evans also responded to the District's interrogatories claiming one comparator, Ms. Ponti, "was allowed to have her formal observation on Memorial Day, when school was closed," suggesting a formal observation never occurred.[98] Ms. Evans now admits this allegation is contradicted by the record evidence showing Principal Ortiz conducted Ms. Ponti's formal observation on Wednesday, May 26, 2021, a school day and not a holiday.[99]

Ms. Evans claims two white teachers showed movies in their classrooms and Principal Ortiz did not criticize the white teachers. But there is nothing in the record showing white teachers: (a) showed a movie during an entire instructional period; and (b) showed movies to their students without being criticized for doing so. Ms. Evans disputes this, claiming two white women teachers – Ms. Coyle and Ms. Gerber – showed a movie during the entire instructional period.[100] Ms. Evans cites only her unsupported Declaration and provides no record evidence to support her claim.[101]

Ms. Evans also admits the District retained Kathleen Braxton, a Black woman and a new first-year teacher in the Program for the 2020–2021 school year.[102]

Ms. Evans concedes her disparate treatment claims based on race discrimination under Title VII, section 1981, and the PHRA and sex discrimination under Title VII and the PHRA are based on a pretext theory and analyzed under the three-step framework detailed by the Supreme Court in *McDonnell Douglas Corp. v. Green.*[103] Under the *McDonnell Douglas* framework, Ms. Evans must first establish a prima facie case of discrimination. If she succeeds, the burden shifts to the District to articulate a legitimate, nondiscriminatory reason for Ms. Evans's termination. If the District does so, Ms. Evans must establish by a preponderance of the evidence the District's proffered reason for her termination is pretext for discrimination.[104] Under the *McDonnell Douglas* burden-shifting framework, "the ultimate burden of proving intentional discrimination always rests with the plaintiff."[105]

15

### 1. Ms. Evans fails to adduce evidence of a prima facie case of race or sex-based disparate treatment.

To establish a prima facie case of disparate treatment race or sex discrimination, Ms. Evans must show: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of intentional discrimination.[106] "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin."[107]

The District challenges the fourth element of the prima facie case; the recommendation for termination occurred under circumstances giving rise to an inference of intentional discrimination.[108] The fourth element may be shown in a "in a number of ways."[109] Although "comparator" evidence is most commonly used to show circumstances giving rise to an inference of discrimination, "evidence of similar ... discrimination against other employees, or direct evidence of discrimination from statements or actions by [the employee's] supervisors suggesting [discriminatory] animus" may give rise to an inference of discrimination.[110] Ms. Evans may also establish an inference of discrimination with the same evidence used to demonstrate pretext.[111]

Comparator evidence includes identification of similarly situated individuals outside the plaintiff's protected class who engage in the same conduct but are treated more favorably by the employer which may give rise to an inference of unlawful discrimination.[112] "Similarly situated" does not mean identically situated; it means "similar[] ... in all relevant respects."[113]

### a. Ms. Evans fails to respond to the District's comparator evidence argument.

The District argues the five comparator teachers identified by Ms. Evans are not similarly situated to her to support the fourth element of the prima facie case. It argues the evidence shows

16

it recommended termination based on Ms. Evans's unsatisfactory teaching performance and failure to meet standards and there is no evidence the District retained similarly situated white or male teachers with an unsatisfactory performance or failure to meet standards rating.

The District first argues neither Mr. Farina (a white male) nor Ms. Lupoli (a white female) were first year/new teachers or in the Program for the 2020–2021 school year and are not similarly situated to Ms. Evans to be appropriate comparators. Ms. Evans admitted neither Mr. Farina nor Ms. Lupoli were new, first-year teachers in the Program during the 2020–2021 school year.[114] Mr. Farina and Ms. Lupoli are not "similarly situated" to Ms. Evans; they were not new, first-year teachers and were not in the Program during the 2020–2021 school year. They are nothing like Ms. Evans and, even if they were, there is no record evidence of either of them receiving unsatisfactory performance ratings or being placed on an Intensive Support Plan. Ms. Evans does not dispute these facts nor does she respond to the District's argument.

The District concedes it assigned three white women Ms. Ponti, Ms. Zuleba, and Ms. Kajkowski to the Program during the 2020–2021 school year. But it argues there is no evidence in the record of their formal observations to determine their performance ratings to compare them to Ms. Evans, no evidence it ever placed any of them on an Intensive Support Plan, no evidence of recommendations made by their respective Consulting Teachers regarding retention or performance, and no evidence of ratings of "needs improvement" in informal observations. At bottom, we have no documents to determine whether the District treated these comparators more favorably than Ms. Evans.[115] Ms. Evans admits these facts and does not respond to the District's arguments regarding these comparators.

17

Ms. Evans offers no comparator evidence to satisfy the fourth element of the prima facie case. The evidence instead demonstrates there are no similarly situated comparators treated more favorably by the District.

### b. The District's Investigative Report does not create an inference of discrimination.

Ms. Evans contends she adduced disputed evidence of race and sex-based animus regarding Principal Ortiz's "actions against [her]," including Principal Ortiz's recommendation to terminate Ms. Evans made to the Panel. Ms. Evans cites the Investigative Report finding complaints by third parties showing (according to Ms. Evans) Principal Ortiz's "penchant" for taking discriminatory, harassing, and retaliatory action. She argues we should not credit the Investigative Report's ultimate finding of insufficient evidence of race or sex-based discrimination or discrimination based on any other protected category because the testimony of third-party witnesses collected in the Investigative Report "actually supports a finding of discrimination, harassment, and retaliation."[116] In essence, Ms. Evans asks us to sit as a review board of the District's Investigative Report and ignore its findings of insufficient evidence of discriminatory animus in favor of her interpretation of reports made by current or former McDaniel school teachers, counselors, specialists, and staff who are Black, white, multi-racial, LGBQT women and men regarding their experiences with Principal Ortiz.

Ms. Evans also argues Principal Ortiz is not credible because she "lied under oath" when she denied ever having been charged with discrimination, harassment, or retaliation – aside from this case – even though a former teacher's aide sued Principal Ortiz, the District, and the City of Philadelphia eight years ago (in 2014) alleging discrimination on the basis of sex and race and retaliation.

18

Ms. Evans does not meet her burden of establishing the fourth element of the prima facie case through her version of the District's Investigative Report. Ms. Evans did not plead and does not claim a hostile work environment based on race or sex; she pleads disparate treatment based on race and sex. She does not direct us to a specific area of the Investigative Report she believes creates an inference of race or sex-based discrimination against her. She instead asks us to review and second guess the District's Investigative Report and then conclude it creates an inference of race and sex-based discrimination against her based on her interpretation of reports made by other teachers and staff interviewed during the investigation Investigative Officer O'Brien ultimately determined did not support a finding of race or sex-based discrimination.

We are also unpersuaded by Ms. Evans's argument Principal Ortiz lacks credibility because she "lied" about an eight-year-old lawsuit against her. This is not evidence the District's recommendation to terminate Ms. Evans occurred under circumstances giving rise to an inference of intentional discrimination.

Ms. Evans fails to meet her burden to establish the fourth element of the prima facie case of race or sex-based discrimination.

### c. Ms. Evans did not plead discrimination based on sexual orientation.

Ms. Evans claims, for the first time in response to summary judgment, discrimination based on sexual orientation as a member of the LGBTQ community in violation of Title VII. Ms. Evans did not plead discrimination based on sexual orientation in violation of Title VII; she alleged she has a "federal statutory right under Title VII ... to be accorded the same rights as were enjoyed by White ***and male employees*** with respect to the terms and conditions of their employment relationship ...."[117] Ms. Evans did not identify sexual orientation as a basis for discrimination in discovery responses.[118]

19

We cannot evaluate theories first hatched to counter summary judgment. Ms. Evans may not "introduce new legal theories or claims through an opposition to a motion for summary judgment."[119] We cannot construe Ms. Evans's complaint as asserting a claim for discrimination based on sexual orientation.

### 2.   Ms. Evans fails to show the District's articulated legitimate, non-discriminatory reason for its actions are pretext.

Even if Ms. Evans met her burden on the fourth element of the prima facie case, she does not show through direct or circumstantial evidence the legitimate, nondiscriminatory reason for her termination is "merely pretext" and her "protected status … [is] the determinative factor of the adverse employment action."[120]

To defeat summary judgment at the pretext step, Ms. Evans "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." [121] Ms. Evans may meet her burden by "painting the [employer's articulated reasons] as weak, implausible, contradictory, or incoherent. Or, for example, 'by showing that the employer in the past had subjected [the employee] to unlawful discriminatory treatment, [or] that the employer treated other, similarly situated persons not of [her] protected class more favorably.'"[122]

The District argues Ms. Evans cannot show its legitimate, nondiscriminatory reason for her termination – unsatisfactory performance – is a pretext for race or sex-based discrimination. The District argues it terminated Ms. Evans based on her unsatisfactory performance citing evidence: both Principal Ortiz and Consulting Teacher Strothers (who Ms. Evans concedes did not discriminate against her on the basis of race) each separately rated Ms. Evans's performance as unsatisfactory and both recommended her dismissal to the Panel; Principal Ortiz did not have

unilateral authority to dismiss Ms. Evans; Consulting Teacher Strothers independently recommended Ms. Evans be dismissed based on her concerns with Ms. Evans's abilities as a teach and lack of improvement over the 2020–2021 school year; Assistant Principal Howard evaluated Ms. Evans's performance as unsatisfactory (and Ms. Evans concedes Assistant Principal Howard's evaluation is not discriminatory); and the Panel comprised of four District Representatives and four Union representatives unanimously recommended dismissal.

Ms. Evans offers no evidence or credible argument showing how a factfinder could reasonably either disbelieve the District's legitimate, nondiscriminatory reasons for her termination or believe an invidious discriminatory reason is more likely than not a motivating or determinative cause of her termination. Ms. Evans cites the same evidence she claims establishes the fourth element of the prima facie case. Ms. Evans disagrees with the District's decision and its Investigative Report, but she must do something more than show the District's decision is "wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motived the [District], not whether [it] is wise, shrewd, prudent, or competent."[123]

Ms. Evans does not offer comparators, evidence the District treated other similarly situated white or male teachers more favorably than her, and no evidence to either disbelieve the Panel's recommendation of unsatisfactory performance warranting dismissal or believe an invidious discriminatory reason is more likely than not a motivating or determinative cause of her termination in the face of overwhelming documented evidence of Ms. Evans's unsatisfactory performance and failure to improve over the school year. The record confirms – and Ms. Evans admits – Principal Ortiz lacked the authority to terminate her, but could only make a recommendation, and Consulting Teacher Strothers – who Ms. Evans concedes did not discriminate against her – also recommended termination based on repeated visits to Ms. Evans's

classroom and administering an Intensive Support Plan. Ms. Evans conceded Principal Ortiz's recommendation for termination had "less sway" than Consulting Teacher Strothers and does nothing to show how Consulting Teacher Strothers held a race or sex-based animus; in fact, she concedes Consulting Teacher Strothers had no such animus.

We enter judgment in the District's favor on Ms. Evans's race and sex-based disparate treatment claims.

### B. Ms. Evans fails to adduce evidence of retaliation based on complaints of race and sex-based discrimination and harassment.

We also apply the *McDonnell Douglas* framework to evaluate whether Ms. Evans adduced evidence of genuinely disputed material facts supporting her retaliation claims.[124] Like a disparate treatment claim, Ms. Evans must first establish a prima facie case of retaliation; if she does so, the burden shifts to the District to present a legitimate, non-retaliatory reason for the termination; and, if the District meets its burden, the burden shifts back to Ms. Evans to demonstrate the proffered reasons are false and retaliation is the real reason for her termination.[125] Like her disparate treatment claim, Ms. Evans must adduce some evidence the District's legitimate, non-retaliatory reason for her termination is pretext.[126] Ms. Evans can meet this burden by painting the [District's] [articulated reasons] as weak, implausible, contradictory, or incoherent" [or] "for example, 'by showing [the District] in the past had subjected [Ms. Evans] to unlawful discriminatory treatment, [or] [the District] treated other, similarly situated persons not of [her] protected class more favorably."[127]

To establish a prima facie case of retaliation, Ms. Evans must show (1) she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse employment action.[128] The burden is on Ms. Evans to establish causation "at two stages

of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the *McDonnell Douglas* framework to satisfy her ultimate burden of persuasion by proving pretext."[129] Ms. Evans has a "higher causal burden" in her retaliation claim than a claim asserting "direct status-based discrimination under Title VII."[130] The jurisprudence developed by our Court of Appeals describes the standard required to show a causal connection between retaliatory animus and an adverse employment action as a "determinative effect" and "the real reason" for the employer's adverse employment action.[131] The "determinative effect" and "real reason" causation standards are "functionally the same" as the Supreme Court's "but for" causation standard between an adverse employment action and retaliatory animus.[132]

But in the caselaw developed in our Circuit, an employee bringing a retaliation claim under Title VII need not, at the prima facie stage, prove but-for causation.[133] At the prima facie stage, an employee must adduce evidence "sufficient to raise the inference that [her] protected activity was the *likely reason* for the adverse [employment] action."[134] Ms. Evans can meet this burden to demonstrate a causal connection between the protected activity and the adverse employment action by relying on "a broad array" of evidence, including evidence of the District's inconsistent explanation for the adverse employment action, a pattern of antagonism, or "unusually suggestive" temporal proximity. These are not the only ways to show causation at the prima facie stage and we are directed to consider the proffered evidence as a whole.[135]

### 1. Ms. Evans does not adduce evidence of a prima facie case of retaliation.

The District challenges the first and third elements of the prima facie retaliation case: Ms. Evans did not engage in protected activity before her termination and, even if she did, there is no causal connection between her protected activity and her termination.[136] Ms. Evans asserts her February 13, 2021 Union grievance is protected activity, there is evidence the Union forwarded it

23

Assistant Superintendent Conley, and there is a causal connection between her February 2021 grievance and her June 2021 termination.

The District first argues the February 13, 2021 grievance cannot be considered protected activity because the only document in the record is the cover email from Ms. Evans to the Union representative saying only "I'm writing regarding a grievance that involves my Principal at Delaplaine McDaniel Elementary School. Attached you will find a document detailing the concerns I have." But Ms. Evans never produced the document detailing her concerns. So, argues the District, we cannot determine whether Ms. Evans complained about race or sex-based discrimination and protected activity. The District argues the only evidence of record regarding the content of the Union grievance is Ms. Evans's deposition testimony. Ms. Evans swore she complained Principal Ortiz's conduct in the classroom "was disruptive and unprofessional," explaining "disruptive and unprofessional" meant Principal Ortiz "engag[ed] with the students in a manner that interrupted the class while I was trying to teach." There is no evidence Ms. Evans complained to the Union about race or sex discrimination. A retaliation claim "must be tied to Title VII. An employee must have complained about the type of conduct that is generally protected by that Title, such as discrimination on the basis of race."[137]

Ms. Evans does not respond to this argument. She does not adduce evidence about the nature of her grievance filed with the Union. She instead argues Principal Ortiz knew about grievances Ms. Gerber made to the Union forwarded to Assistant Superintendent Conley. None of her suppositions provide evidence of the nature of Ms. Evans's grievance to determine whether she complained about conduct protected by Title VII. And the evidence we do have is Ms. Evans's swearing she based her Union grievance on Principal Ortiz's "disruptive and unprofessional" conduct without mention of race or sex-based animus.

The District next argues even if the February 13, 2021 Union grievance is protected activity, she cannot show causation between the grievance and her termination four months later. The District contends the four months between the February 13, 2021 Union grievance and the June 2021 recommended termination is not "usually suggestive" of retaliatory motive.

Ms. Evans disagrees. She argues, without citing authority, a four month gap between her Union grievance and termination is "unusually suggestive." It is not under our governing standards where an intervening time period of *days* may raise an inference of causation but "a period of two months cannot."[138] Although there is no "bright-line rule" for the time between protected activity and an adverse employment action, our Court of Appeals finds days, not months, are unusually suggestive.[139] Our Court of Appeals recently found a two-month gap between protected activity and termination "is too long to draw an inference of retaliation."[140] There is no unusually suggestive timing to support causation between Ms. Evans's February 13, 2021 grievance and the decision to terminate her four months later..

Without temporal proximity to show causation, our Court of Appeals directs we must evaluate whether an employee adduced evidence of a "a pattern of antagonism coupled with timing" to establish a causal link.[141] Perhaps recognizing her temporal proximity problem, Ms. Evans asks us to consider the evidence she relies on to support the fourth element of her prima facie case of race discrimination and pretext if we find four months is not unusually suggestive of causation. This evidence, again, are comments made by interviewed employees summarized in the Investigative Report, Principal Ortiz's purported "penchant" for discriminatory, harassing, and retaliatory conduct, and Principal Ortiz's testimony denying ever being accused of discrimination even though someone named her in a lawsuit eight years ago.

For all the reasons in the race and sex-based disparate treatment analysis, we do not find a pattern of antagonism or evidence of a causal link between the February 2021 Union grievance and the June 2021 termination. Ms. Evans failed to meet her burden of adducing evidence sufficient to raise the inference her protected activity is the likely reason for her termination. We enter judgment in favor of the District on Ms. Evans's retaliation claim.

### 2. Ms. Evans fails to show the District's articulated legitimate, non-retaliatory reason for its termination decision are pretext.

Even if Ms. Evans met her burden of a prima facie case of retaliation, she must still show the District's articulated legitimate, non-retaliatory reasons for her termination are pretext. The District argues Ms. Evans failed to meet her burden of showing some evidence its performance-based reasons for her recommended termination are a pretext for retaliation, relying on the same argument made regarding no evidence of pretext to support race or sex-based discrimination claims. The District also argues even before Ms. Evans's February 13, 2021 grievance to her Union, the Panel had already put her on an Intensive Support Plan based on two "needs improvement" informal observations made by Principal Ortiz and Assistant Principal Howard. Ms. Evans has no problem with Assistant Principal Howard and does not allege Assistant Principal Howard discriminated against her on the basis of race.

Ms. Evans chose not to respond to this argument; she instead focuses her argument on the prima facie case of retaliation. For the same reasons discussed in our finding of no evidence to support pretext in the disparate treatment claims, we find Ms. Evans adduces no evidence for us to find the District's recommended termination is pretext for retaliation against her following her February 13, 2021 grievance. She adduces no evidence to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" from which a reasonable factfinder could conclude the District's legitimate, performance-based recommended termination

26

is unworthy of credence allowing an inference the District acted not for its legitimate reasons but in retaliation. We enter judgment in favor of the District.

## III. Conclusion

Ms. Evans fails to identify facts enabling her to make a sufficient showing on the essential elements of her race and sex-based disparate treatment and retaliation claims on which she bears the burden of proof at trial. We enter judgment in favor of the District on all claims.

---

[1] Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts ("SUMF") and an appendix to support summary judgment. The District filed its SUMF, Motion, and brief in support of summary judgment and Appendix at ECF Doc. Nos. 15, 15–1, and 15–2 through 15–29. Ms. Evans filed her response brief, response to the District's SUMF, and supplemental Appendix at ECF Doc. Nos. 20, 20–1, and 20–2. Ms. Evans submitted a counter statement of facts at ECF Doc. No. 20–2. The District replied at ECF Doc. No. 21.

[2] ECF Doc. No. 15–1, District SUMF ¶¶ 1–3, 27.

[3] *Id.*, District SUMF ¶¶ 9–11; ECF Doc. No. 15–5 Appendix ("Appx.") 53.

[4] ECF Doc. No. 15–1, District SUMF ¶ 12. Ms. Evans admits she served as a "specialist teacher" but denies the District's assertion she taught creative writing. *Id.* Ms. Evans contends she did not teach creative writing, Principal Ortiz did not want a creative writing course or for Ms. Evans to teach language arts, but the course title "creative writing" is the "only one" Principal Ortiz "could think of, and that was available in the list of preparatory courses, that she could have put on the student report card." ECF Doc. No. 20–1, Evans response to SUMF ¶ 12. The name of the course taught by Ms. Evans is not material. The parties agree Ms. Evans taught a course called "Project Wisdom." ECF Doc. No. 15–1, District SUMF ¶ 14.

[5] ECF Doc. No. 15–1, District SUMF ¶¶ 19–20.

[6] *Id.* ¶ 22; ECF Doc. No. 15–12 at Appx. 262–64.

[7] ECF Doc. No. 15–1, District SUMF ¶¶ 21–23; ECF Doc. No. 15–12, Appx. 262–64.

[8] ECF Doc. No. 15–1, District SUMF ¶ 25.

[9] *Id.* ¶ 24.

[10] *Id.* ¶¶ 26–27.

[11] *Id.* ¶ 28.

[12] *Id.* ¶ 33.

[13] *Id.* ¶ 34.

[14] *Id.* ¶¶ 29–30.

[15] *Id.* ¶¶ 31–32.

[16] *Id.* ¶¶ 21, 27.

[17] *Id.* ¶¶ 4–7.

[18] *Id.* ¶¶ 35–36.

[19] *Id.* ¶¶ 37–39. These teaching areas are called "Domains" based on the "Danielson Framework for Teaching." Domain I is "Planning and Preparation"; Domain II is "The Classroom Environment"; Domain III is "Instruction." *Id.* ¶¶ 44–48.

[20] *Id.* ¶¶ 40, 41.

[21] ECF Doc. No. 15–14, Appx. 372–518.

[22] *Id.*, Appx. 402, 427, 431, 436, 440, 444 ("not meeting standards"), Appx. 383, 392, 406, 410, 414, 418 ("approaching standards").

[23] ECF Doc. No. 15–1, District SUMF ¶¶ 42, 43.

[24] *Id.* ¶ 58.

[25] *Id.* at ¶¶ 44–46; ECF Doc. No. 15–16 at Appx. 520–28.

[26] *Id.* at ¶¶ 47–48; ECF Doc. No. 15–17 at Appx. 529.

[27] *Id.*

[28] *Id.*

[29] ECF Doc. No. 15–1, District SUMF ¶ 49; ECF Doc. No. 15–4 at Appx. 14, Notes of Testimony ("N.T.") Ciana Evans at 30–31.

[30] ECF Doc. No. 15–1, District SUMF ¶ 50.

[31] *Id.* ¶¶ 51–53.

[32] *Id.* ¶ 58.

[33] *Id.* ¶¶ 105–106.

[34] *Id.* ¶¶ 106, 113; ECF Doc. No. 15–25, Appx. 588.

[35] ECF Doc. No. 15–25, Appx. 588.

[36] ECF Doc. No. 15–1, District SUMF ¶ 107; ECF Doc. No. 15–4, Appx. 18, N.T. C. Evans at 48:12–18.

[37] ECF Doc. No. 15–1, District SUMF ¶ 108; ECF Doc. No. 15–4, Appx. 18, N.T. C. Evans at 48:19–24.

[38] ECF Doc. No. 15–1, District SUMF ¶ 109.

[39] *Id.* ¶¶ 110–112.

[40] *Id.* ¶ 54; ECF Doc. No. 15–19 at Appx. 539–548.

[41] ECF Doc. No. 15–1, District SUMF ¶¶ 55–57.

[42] ECF Doc. No. 15–14, Appx. 448, 453, 462, 467, 471, 476, 480, 484, 488, 492, 496, 506 ("not meeting standards"), Appx. 501 ("meeting standards").

[43] ECF Doc. No. 15–19, Appx. 542.

[44] *Id.*, Appx. 544–46.

[45] ECF Doc. No. 15–1, District SUMF ¶¶ 62–63.

[46] *Id.* ¶ 64; ECF Doc. No. 15–20, Appx. 549–62.

[47] ECF Doc. No. 15–20, Appx. 552–53.

[48] *Id.*, Appx. 554–55.

[49] *Id.*, Appx. 556–58.

[50] ECF Doc. No. 15–1, District SUMF ¶¶ 65, 68.

[51] *Id.* ¶ 67.

[52] *Id.* ¶ 114.

[53] ECF Doc. No. 15–1, District SUMF ¶¶ 69–70; ECF Doc. No. 15–21 at Appx. 563–64.

[54] ECF Doc. No. 151, District SUMF ¶¶ 71, 72; ECF Doc. No. 15–21 at Appx. 563–64.

[55] ECF Doc. No. 15–1, District SUMF ¶ 76.

[56] *Id.* ¶¶ 75–77; ECF Doc. No. 15–22 at Appx. 565–576.

[57] ECF Doc. No. 15–1, District SUMF ¶ 77.

[58] *Id.* ¶ 73.

[59] *Id.* ¶ 118.

[60] ECF Doc. No. 15–27, Appx. 597.

[61] ECF Doc. No. 15–1, District SUMF ¶ 119; ECF Doc. No. 15–27, Appx. 597–625. Ms. Gerber is a white woman and did not raise discrimination based on race. *See* ECF Doc. No. 15–27, Appx. 597.

[62] ECF Doc. No. 15–27, Appx. 597–625. Investigative Officer O'Brien also addressed Principal Ortiz's allegation of harassment against Ms. Gerber.

[63] *Id.*, Appx. 598.

[64] *Id.*, Appx. 597–625.

[65] ECF Doc. No. 15–1, District SUMF ¶¶ 120–123; ECF Doc. No. 15–27, Appx. 624.

[66] *Id.*

[67] *Id.* The District also found insufficient evidence to find Ms. Gerber's conduct toward Principal Ortiz severe, persistent, or pervasive impacting Principal Ortiz's ability to perform her job or created an intimidating, hostile, or offense work environment. *Id.*

[68] ECF Doc. No. 15–27, Appx. 623–24.

[69] *Id.*, Appx. 624.

[70] *Id.*, Appx. 624–25.

[71] ECF Doc. No. 15–1, District SUMF ¶¶ 124–127.

[72] ECF Doc. No. 1.

---

[73] ECF Doc. No. 1. Ms. Evans also purports to bring a claim under 42 U.S.C. § 2000d. *See* ECF Doc. No. 1 at Count II. Section 2000d is Title VI of the Civil Rights Act of 1964. Title VI prohibits race, color, and national origin discrimination in federally funded programs or activities. *See, e.g. Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1569, 212 L.Ed 552 (2022). Ms. Evans appears to have abandoned her Title VI discrimination claim having failed to brief it in response to the District's motion for summary judgment. *See* ECF Doc. No. 20.

[74] ECF Doc. No. 1 ¶ 32 (emphasis added).

[75] Ms. Evans's Opposition to summary judgment raises, for the first time, discrimination based on sexual orientation. *Compare* ECF Doc. No. 1 ¶ 32 *with* ECF Doc. No. 20 at 9. She did not allege this theory, move to amend to include this theory, and cannot change her claims in briefing.

[76] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[77] ECF Doc. No. 20 at 1, n. 1.

[78] *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

[79] 42 U.S.C. § 2000e–2(a)(1). Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981. Although the language of section 1981 "does not itself use the word 'race,' the

[Supreme Court] has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts," including employment. *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (3d Cir. 1987). The PHRA makes it "an unlawful discriminatory practice … [f]or any employer because of the race, color, … sex, … to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual … or to otherwise discriminate against such individual …with respect to compensation, hire, tenure, terms, conditions or privileges of employment … ." 43 P.S. § 955(a).

[80] ECF Doc. No. 20 at 9.

[81] *See* ECF Doc. No. 20–1, Evans Supplemental SUMF ¶¶ 138, 139–141.

[82] *Stucke v. City of Phila.*, 685 F. App'x 150, 154 (3d Cir. 2017) (analyzing a Title VII hostile work environment claim) (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

[83] ECF Doc. No. 1 ¶ 11.

[84] *Id.* ¶ 12.

[85] *Id.* ¶ 13.

[86] *Id.* ¶ 14.

[87] *Id.* ¶ 15.

[88] *Id.* ¶ 16.

[89] *Id.* ¶ 17.

[90] ECF Doc. No. 20–1, Evans Supplemental SUMF ¶ 156. Ms. Evans does not explain the significance or relevance of Principal Ortiz's "persuading" Ms. Evans to "not fill out the Middle Years [English Language Arts] position she applied for. Ms. Evans swore she applied for the middle years English Language Arts position but Principal Ortiz "persuaded [Ms. Evans] not to take that position." ECF Doc. No. 15–4 at Appx. 14, N.T. C. Evans at 32–33. Ms. Evans swore she could not recall Principal Ortiz's exact words but "described it [presumably not taking the English Language Arts position] as the best thing that could ever happen to my career . . . in teaching." *Id.* Ms. Evans swore Principal Ortiz's conduct in persuading her not to take the English Language Arts position is discriminatory based on race or gender because "[i]t got me away from teaching something I was – I know I was good at, something I was comfortable with. It forced me into a role that no one could ever perform well at. Because no one would have ever been able to predict how [Principal Ortiz] would have wanted this course to change over time so often or frequently in response to the different changes that were happening in and around our school and at the District level." *Id.* at Appx. 14–15, N.T. C. Evans at 33–34.

[91] ECF Doc. No. 15–1, District SUMF ¶¶ 75, 76; ECF Doc. No. 15–23, Appx. 582, Interrogatory No. 17.

[92] ECF Doc. No. 15–1, District SUMF ¶¶ 110–112.

[93] ECF Doc. No. 20 at 10.

[94] ECF Doc. No. 15–1, District SUMF ¶ 88.

[95] *Id.* ¶ 93.

[96] *Id.* ¶¶ 89–100.

[97] *Id.* ¶¶ 101–102.

[98] *Id.* ¶ 94.

[99] *Id.* ¶ 95.

[100] ECF Doc. No. 20–1, Evans response to SUMF ¶¶ 85–86.

[101] "[G]enerally, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). Ms. Evans contends Principal Ortiz "admitted she never prevented a non-Black teacher from showing a movie to students during class time." ECF Doc. No. 20–1, Supplemental SUMF ¶ 152. This is an inaccurate representation of Principal Ortiz's deposition testimony. Principal Ortiz stated there is nothing wrong with showing "bits and pieces of a move, but it was like the entire lesson" – referring to her informal observation of Ms. Evans's class – "[t]he entire 45 minutes was a movie. And I did let [Ms. Evans] know that that's not okay. ... If you have clips, you know, to see of a certain movie, but this was --- you know, the entire period was a movie ... You can show clips of movies, but you can't – that's not teaching. That's not instruction." ECF Doc. No. 15–6, Appx. 77–78, N.T. B. Ortiz at 93:10–25, 94:1–2.

Ms. Evans's counsel asked Principal Ortiz: "Have you prevented non-Black teachers from showing movies to their students?" Principal Ortiz responded:

> "So – no. Teachers – and what I have witnessed and seen – and again, it's not that you can't show movies or videos; you can. But it's clips – you know, our kids come at a deficit. These are kids that are three and four years behind in reading, math, and writing, and we're going to spend 45 minutes watching a movie? So, no. So if you have portions of a movie, two minutes, three minutes, and then we are going to discuss it so you can model what the thinking process is, that's great. But that's not what was done. And I've seen teachers do that; black, white, Latina, all teachers, you know do that and incorporate that as that could be another instructional strategy. But I have not seen a teacher show an entire --- that I'm aware of – an entire instructional block of a movie."

*Id.*, Appx. 78, N.T. B. Ortiz at 95:14–25, 96:1–7. This is not an admission by Principal Ortiz she "never prevented a non-Black teacher from showing a movie to students during class time." To the contrary, Principal Ortiz swore showing two or three minute clips of movies followed by discussion is acceptable but not the entire forty-five minute class period.

[102] ECF Doc. No. 15–1, District SUMF ¶ 104.

[103] 411 U.S. 792 (1973). Race-based employment discrimination claims under Title VII, section 1981, and the PHRA are analyzed in the same way. The substantive elements of a race discrimination claim under section 1981 are "generally identical" to the elements of a Title VII employment discrimination claim. *Carvalho–Grievous v. Delaware State Univ.*, 851 F.3d 249, 256–57 (3d Cir. 2017) (quoting *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009)); *Vaughn v. Boeing Co.*, 733 F. App'x 617, 622 n. 4 (3d Cir. 2018) (the elements of a claim under section 1981 are the same as the elements of employment discrimination claims under Title VII and the PHRA). Similarly, sex-based discrimination claims under Title VII and the PHRA are analyzed in the same way. *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

[104] *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

[105] *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[106] *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999).

[107] *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (cleaned up).

[108] As to the qualification element, the District concedes for purposes of summary judgment Ms. Evans is minimally qualified for a teaching position only to the extent she met the minimum criteria to work under an emergency permit and notes she does not have a teaching certification. *See* ECF Doc. No. 15 at 4, n. 3.

[109] *Fennell v. Comcast Cable Communications Management, LLC*, --- F. Supp. 3d ---, No. 19-4750, 2022 WL 4296690, at \*11 (E.D. Pa. Sept. 16, 2022) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n. 2 (3d Cir. 2010)).

[110] *Id. See also Verdu v. Trustees of Princeton Univ.*, No. 20-1724, 2022 WL 4482457, at \*5 (3d Cir. Sept. 27, 2022) ("'The evidence most often used to establish … disparate treatment' involves 'a plaintiff show[ing] that she was treated less favorably than similarly situated employees who are not in her protected class.'") (quoting *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008)).

[111] *Fennell*, 2022 WL 4296690 at \*11 (citing *McFadden v. Whole Foods Market Grp., Inc.*, No. 19-1103, 2021 WL 736899, at \*9 (E.D. Pa. Feb. 25, 2021)).

[112] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013).

[113] *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881-82 (3d Cir. 2011).

[114] ECF Doc. No. 15–1, District SUMF ¶ 90; ECF Doc. No. 20–1, Evans response to SUMF ¶ 90.

[115] According to the District, Ms. Evans did not serve any discovery on it. ECF Doc. No. 15 at 1. Ms. Evans does not dispute this in her response to summary judgment.

[116] ECF Doc. No. 20 at 8. The District counters the summarized interviews of third-parties in the Investigative Report are inadmissible hearsay we may not consider on summary judgment. We disagree with the District. Our Court of Appeals instructs "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of New Jersey,* 223 F.3d 220, 223, n. 2 (3d Cir. 2000) (citing *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 n. 17 (3d Cir. 1995)). We have no basis to find teachers and administrators interviewed by Investigative Officer O'Brien are not available to testify at trial.

[117] ECF Doc. No. 1 ¶ 32 (emphasis added). In the background section of her Complaint, Ms. Evans alleged she filed a complaint of discrimination and harassment with the District's Office of Employee and Labor Relations alleging she and other women of color and women in the LGBTQ community were subjected to harassment and discrimination by Ms. Ortiz during the 2020–2021 school year. ECF Doc. No. 1 ¶ 10. But she did not plead sexual orientation discrimination in her Complaint.

[118] ECF Doc. No. 15–23, Appx. 579; ECF Doc. No. 15–4, Appx. 14–16, N.T. C. Evans 32–35.

[119] *Phillips v. SEPTA*, No. 16–986, 2018 WL 827440, at * 4 (E.D. Pa. Feb. 12, 2018) (collecting cases). In *Phillips*, the plaintiff alleged race and national origin discrimination and retaliation in violation of Title VII and the PHRA, alleging his employer, SEPTA, failed to promote him to a foreperson position in 2014, failed to promote him to a manager position, and created a hostile work environment. *Id.* at * 3. In response to SEPTA's motion for summary judgment, Mr. Phillips argued the basis for his discrimination claim also included SEPTA's failure to promote him to a foreperson position in 2013. Judge Robreno found the 2013 failure to promote is a "new, essentially unsupported allegation concern[ing] a separate and distinct event from those alleged in the complaint" and Mr. Phillips "is attempting to raise an entirely new claim in his response to the motion for summary judgment," a new legal theory or claim not pleaded in his complaint. Judge Robreno did not allow the new claim raised in opposition to summary judgment to be added. *Id.* at *4.

[120] *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020).

[121] *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764). *See also Coley v. New Jersey Transit Corp.*, No. 21-2373, 2022 WL 5240385, at *3 (3d Cir. Oct. 6, 2022) (quoting *Fuentes*, 32 F.3d at 765) (To show pretext, a plaintiff must "either (1) submit evidence that 'meaningfully throw[s] into question, i.e., [casts] substantial doubt upon' the employer's proffered reason, or (2) 'come

forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision.'").

[122] *Fuentes*, 32 F.3d at 765.

[123] *Id.*

[124] *Kengerski v. Harper*, 6 F. 4th 531, 536 n. 3 (3d Cir. 2021).

[125] *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346–47 (3d Cir. 2022) (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).

[126] *Id.* at 347 (quoting *Fuentes*, 32 F.3d at 764).

[127] *Id.* (quoting *Fuentes*, 32 F.3d at 765).

[128] *Id.* at 346 (quoting *Daniels*, 776 F.3d at 193).

[129] *Carvalho–Grievous,* 851 F.3d at 257.

[130] *Id.* at 257–58.

[131] *Id.* at 258 (explaining *Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997) and *Moore v. City of Phila.*, 461 F.3d 331 (3d Cir. 2006)).

[132] *Id.*

[133] *Id.* at 259.

[134] *Id.* at 259 (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (emphasis added)).

[135] *Id.* at 260.

[136] The District concedes Ms. Evans's June 25, 2021 complaint to its Office of Employment and Labor Relations is protected activity but it did not occur until seventeen days after her termination recommendation. Ms. Evans does not assert the June 25, 2021 complaint is the protected activity on which she bases her claim; she asserts the February 13, 2021 Union grievance is the protected activity.

[137] *Kengerski*, 6 F.4th at 537.

[138] *Carvalho–Grievous*, 851 F.3d at 261 n. 8 (citations omitted).

[139] *See Dondera v. Lower Milford Twp.*, 5 F. 4th 355, 361–62 (3d Cir. 2021) (five month gap is not unusually suggestive temporal proximity in a First Amendment retaliation claim) (collecting cases); *Duncan v. Chester Cnty. Hosp.*, 677 F. App'x 58, 62 (3d Cir. 2017) (thirty-four days is not by itself unduly suggestive); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (a three month gap between the protected activity and adverse action, without more, cannot create an inference of causation).

[140] *Koslosky v. Am. Airlines, Inc.*, No. 20-2081, 2022 WL 4481537, at * 2 (3d Cir. Sept. 27, 2022). In *Koslosky*, our Court of Appeals analyzed temporal proximity in the context of a pretext analysis.

[141] *Dondero*, 5 F. 4th at 362.